THE STATE OF TEXAS v. ELIZABETH BARROW.

Where property is acquired by husband or wife while in the course of their migration to this State, and they remove to and reside in this State, the right to such property is regulated by the laws of this State.
The case of McIntyre v. Chappell, (4 Tex. R. 187,) commented on and qualified or explained.

Appeal from Gonzales. Trial of the right of property in a slave, levied on as the property of Samuel Barrow, and claimed by Elizabeth Barrow, the wife of said Samuel, as her separate property. It appeared that Barrow and his wife resided for many years, prior to 1843, in the State of Mississippi; that in the early part of the summer of that year, being sold out by his creditors, Barrow determined to remove to Texas; that they came by way of Tennessee in order to make a visit to the parents of Mrs. Barrow; that they stopped about four weeks in Tennessee, at the house of the father of Mrs. Barrow; that while there Barrow's father-in-law attempted to dissuade him from coming to Texas, and endeavored to persuade him to settle there; that Barrow remarked that he would not live there for the whole State; that about a week before they left for Texas,

Mrs. Barrow's father announced his intention to give the slave now in controversy to Mrs. Barrow, calling their attention to the fact that he had given them several before, which had been sold for Barrow's debts, and telling them that this one was for Mrs. Barrow's separate benefit, and that they must not permit him to be sold; and that when they were loaded up all ready to start, the slave was delivered to them; that they came directly on to Texas, bringing the slave with them, and resided here ever since, until Barrow's death.

The Court instructed the jury, that if they believed from the evidence, that at the time the slave was given to Mrs. Barrow in Tennessee, it was their fixed intention to remove to Texas, and they did so remove and take up their residence in Texas, without having stopped elsewhere, then the law of Texas would govern.

Verdict and judgment for the claimant.

*Phillips & Phillips*, for appellant. The case before the Court shows that the claimant had not acquired a residence in Texas. The instruction affirms as a legal proposition, that the mere intention to remove is tantamount to a removal. The law is otherwise. The intention and the fact of residence must unite to effect a change of domicil. (Sto. Conf. Sec. 44; 5 Tex. R. 235.)

WHEELER, J. The question to be determined is, whether the slave, levied on as the property of the husband, became his in virtue of his marital rights, upon the gift to the wife in Tennessee, according to the laws of Tennessee, or became separate property of the wife, according to the laws of this State; in other words, whether the acquisition of the property was governed by the laws of Tennessee or Texas.

It does not appear in what State the marriage of the parties was celebrated. It does appear, however, that they had resided many years in the State of Mississippi; and that they

had abandoned their residence there with the avowed intention of removing and fixing their future residence in Texas ; and were actually *in transitu*, and only sojourning temporarily on a visit in Tennessee at the time of receiving the gift to the wife. They carried out their original intention, continuing their journey into, and fixing their residence permanently in this State. Upon the facts of this case, it must, we think, be held that the laws of this State, and not those of Tennessee, governed the acquisition of the property. There would be more reason to hold that the laws of Mississippi, (which, it is in evidence, recognize the right of separate property in the wife, and which, it might be presumed, in the absence of proof to the contrary, are the same as our own laws upon that subject,) rather than those of Tennessee, should govern the marital rights of the parties in the acquisition of this property ; upon the principle, that not having acquired a domicil in Texas, *facto et animo*, they still retained their former domicil in Mississippi. For the general rule in relation to domicil is, that the original domicil is not gone until a new one has been actually acquired. (Story, Conf. Laws, Sec. 47.) It is very clear that they had not acquired a domicil in Tennessee, where they were merely on a visit, and while they were actually *in transitu*, to establish their future residence in this State. If they still retained their matrimonial domicil in Mississippi, upon the principle of the case of Edrington v. Mayfield, (5 Tex. R. 363,) it might, perhaps, be contended that the gift took effect and vested the property in the wife according to the laws of that State. That, however, is not the view of the law contended for on behalf of the appellant. It would not support his case. But the doctrine of the Spanish Law, and that which has received the sanction of the Courts and jurists of this country, is that in cases where there has been a change of domicil, as in the present, the law of the actual, and not the matrimonial domicil, will govern as to all future acquisitions of movable property. (Saul v. His Creditors, 5 Martin, N. S. 573 ; Story on Con. of Laws, Sec. 176, 187.) Property acquired after the re-

moval is governed by the law of the actual domicil. It would seem, therefore, that after the removal of these parties from the place of their former domicil in Mississippi, the property acquired should be governed by the law of the domicil which they had in contemplation at the time of its acquisition. And if we have regard to the intentions of the parties, it must, we think, be held that the gift took effect according to the laws of this State. From the moment of quitting the place of their former residence in Mississippi, the husband and wife looked to this State as the place of their future residence, and to its laws to govern their marital rights for the future. Their acts and declared intentions concurred in pointing to the laws of this State as those to which they meant to be subjected, by their future domicil. By them it must be deemed they intended to be governed in their future acquisitions. And the donor made the gift of the property to the wife, evidently with the view of its being enjoyed by her in this State, and of course subject to the influence of the laws of this State. The laws of this State, therefore, must be held to govern the acquisition of the property, and by our laws the property in the slave, acquired by gift from her father, became separate property of the wife, and as such was not subject to be taken in execution for her husband's debts. And this disposes of the question, and requires an affirmance of the judgment in this case.

And here we might close this opinion. But the present is deemed a fit occasion, in connection with this subject, to refer to one of our former opinions, (not referred to in argument) as to the correctness of which I am apprehensive there may be reason to hesitate, and which may require qualification, in order that it may not mislead as to the doctrine which the authorities assert, and which it will be proper for the Court to maintain. I refer to the case of McIntyre v. Chappell. (4 Tex. R. 187.) There is, it is true, no conflict between our decision in that case and the present. There the place of domicil of both the parties had been previously in Tennessee, and was unchanged at the time of the marriage. There was merely

an intention expressed, but manifested by no act, of removing to this State. We considered the case as coming within the principle, that where the place of domicil of both the parties is the same with that of the contract and the celebration of the marriage, the place of celebration is the matrimonial domicil. (Story on Con. of Laws, Sec. 192.) And I am not authorized to say that the Court is not satisfied with that decision, or would not apply the same rule to a case similar in all its circumstances. But I am constrained to say, that subsequent examination of the subject, though less thorough than I should desire before expressing a decided opinion, has caused me to feel less confident in the correctness of the decision than when it was made. It is to be regretted that our means of investigating the subject, and forming a correct judgment, were at the time so very limited. Had we had access to authorities which have since come to our notice, (and we referred to all that were at that time accessible,) if the decision had not been different, the language of the Opinion, at least, might have received some qualification. In one of the cases there cited, (Ford's Curator v. Ford, 2 Martin, N. S. 574,) the Court, it is true, held this language : " We think it may be safely laid down as a prin- " ciple, that the matrimonial rights of a wife who, as in the " present case, marries with the intention of an instant removal " for residence in another State, are to be regulated by the laws " of her intended domicil, when no marriage contract is made, " or one without any provision in this respect." But the Court in that case rested their decision in no small degree, if not mainly, on the fact that the husband's domicil being at the time established in Louisiana, upon general principles drew to it that of the wife ; " because the wife, who by her marriage fol- " lows the husband's domicil, is presumed to have had in view " the law of that domicil which by the marriage is to become " hers. The general rule (the Court said) is to attend to the " law of the husband's domicil, rather than that of the place in " which the contract is entered into."

But in repeated decisions since made by the same Court, the

general principle asserted in the extract from the opinion first above given, has been referred to and adopted as affording the rule of decision. Thus, in Allen v. Allen, (6 Robinson, R. 104,) the Court say, "The rights of spouses are not to be reg- "ulated by the laws of the State in which the marriage is cele- "brated, when it appears that they immediately intended to "remove and fix their residence in another country." But after searching in the acts of the parties for the evidence of their intention, apparently without being able to come to a very satisfactory conclusion upon that point, the case was de- cided upon a different ground. Again, in Routh v. Her Hus- band, (9 Rob. R. 224,) the Court re-assert the same principle, thus: "According to the well settled doctrine of the law, if "the parties contracted marriage with a *bona fide* intention of "making Louisiana the place of their common or matrimonial "residence, and in pursuance of that intention did within a "reasonable time become domiciliated in this State, then the "property belonging to the wife before marriage, and received "by the husband afterwards, or at the time, remained her sep- "arate estate, according to the laws of Louisiana." The hus- band's residence was in Louisiana at and before the marriage, and shortly after the parties removed to and resided in that State. Again, in Fisher v. Fisher, (2 Annual, R. 774,) the Court re-assert the same principle in the same language, and add: "The principle is well settled, that the matrimonial "rights of a wife, who marries with the intention of removing "to another State, must be governed by the law of her intended "domicil." The husband was at the time a citizen of Louis- iana, married in Nashville, Tennessee, intending to reside with his wife in Louisiana, and after a time did return and reside with his wife in the latter State. And again, in Walker v. Durerger, (4 Ann. R. 569,) of a marriage which had been cele- brated in another State, the Court said: "We have no hesi- "tation in holding that under the facts above stated, (those "evidencing the intention of the parties to make Louisiana the "place of their residence,) the rights of Mrs. Wharton, with

"reference to the slaves, were controlled by the law of Louis-
"iana, the matrimonal domicil, which they contemplated at the
"time of the marriage, and which they actually adopted within
"a reasonable time." In this case, also, the husband resided
in Louisiana at the time of the marriage ; and after a summer
excursion to the North, returned with his wife to Louisiana,
where they afterwards resided. (And see Hayden v. Nutt,
Id. 67.)

In all these cases the Court refer to their former opinion in
the case of Ford's Curator v. Ford ; and in all of them, also,
(except, perhaps, the case of Allen v. Allen, where the decision
was upon a different ground,) as in that case, the domicil of the
husband was in Louisiana, at the time of celebration of the
marriage. But in the latter cases the decision is not placed
upon that ground, and that circumstance is adverted to only as
affording evidence of the intention of the parties to the nuptial
contract, to establish their residence in Louisiana. From the
language of the Court in these cases, it is certainly plainly in-
ferable that they would apply the principle, that the intention
of the parties will determine what is to be considered the mat-
rimonial domicil ; at least, in all cases where one of them had
a residence in Louisiana at the time, or where their acts, ante-
cedent to the time of celebration of the marriage, evidenced an
intention to fix their future residence in that State ; if not,
also, to all cases where such was their intention at the time,
however evidenced, and such intention was carried into effect
within a reasonable time thereafter ; upon the principle, it
would seem, that the law of the place where the contract is to
be performed, in this, as in other cases of contracts ; or the
law of the place which the parties are supposed to have had in
contemplation at the time of contracting the marriage, and to
which they intended to be subjected by their future domicil, is
to govern the interpretation of the contract, and to determine
the rights of the parties under it. It is to be observed, how-
ever, that it will be seen by consulting the opinions of the
Court, in the cases which have come to our notice and are re-

ferred to, that the Court have sought for and found the evidence of intention on which they have decided, in acts of one or both of the parties, antecedent to the marriage, and other than the after removal to the place of the intended domicil. It remains to be seen whether they will apply the principle to a case where the place of domicil of both the parties was the same as that of the celebration of the marriage, and there was but the declaration of an intention to fix their domicil in another State, at some future time, which was carried into effect.

The following is the result of the authorities examined by Story, as stated in his Conflict of Laws : " Where the place " of domicil of both the parties is the same with that of the " contract and celebration of the marriage, no difficulty can " arise. The place of celebration is clearly then the matrimo- " nial domicil. But let us suppose that neither of the parties " has a domicil in the place where the marriage is celebrated, " but it is a marriage *in transitu*, or during a temporary resi- " dence, or on a journey made for that sole purpose, *animo rever-* " *tendi* ; what is then to be deemed the matrimonial domicil ?

" The principle maintained by foreign jurists in such cases is, " that with reference to personal rights and rights of property, " the actual or intended domicil of the parties is to be deemed " the true matrimonial domicil ; or, to express the doctrine in a " still more general form, they hold that the law of the place " where at the time of the marriage the parties intended to fix " their domicil, is to govern all the rights resulting from the " marriage. Hence, they would answer the question proposed, " that in such a case the law of the actual domicil of the parties " is to govern, and not the place of the marriage *in transitu*.

" But suppose a man domiciled in Massachusetts should marry " a lady domiciled in Louisiana, what is then to be deemed the " matrimonial domicil? Foreign jurists would answer, that it " is the domicil of the husband, if the intention of the parties is " to fix their residence there ; and of the wife, if the intention " is to fix their residence there ; and if the residence is intended " to be in some other place, as in New York, then the matrimo-

"nial domicil would be in New York." (Con. of Laws, Sec. 192–93–94.) After citing the authority of foreign jurists and decisions of the Courts in this country, and quoting with approbation the language of the Supreme Court of Louisiana in Ford's Curator v. Ford, which we have quoted above, the learned commentator concludes: "Under these circumstances, "where there is such a general consent of foreign jurists to the "doctrine thus recognized in America, it is not, perhaps, too "much to affirm that a contrary doctrine will scarcely hereafter "be established; for in England, as well as in America, in the "interpretation of other contracts, the law of the place where "they are to be performed has been held to govern. Treated, "therefore, as a matter of tacit matrimonial contract, (if it can "be so treated,) there is the rule of analogy to govern it. And "treated as a matter to be governed by the municipal law to "which the parties were, or meant to be, subjected by their "future domicil, the doctrine seems equally capable of a solid "vindication." (Id. 199.)

But in none of the instances given or cases cited in illustration of the doctrine, it is observed, was the place of domicil of both the parties to the contract the same as that of the celebration of the marriage, and the intention to fix their domicil elsewhere, evidenced only by their declarations. In all the instances given, either but one, or neither of them had their domicil in the place where the marriage was celebrated; but it was a marriage when the parties were " *in transitu,* or during a temporary residence, or on a journey made for that sole purpose, *animo revertendi.*" Yet it must be admitted, that the principles maintained would seem to apply equally to a marriage contracted and celebrated in the place of the domicil of both parties, if with the intention of immediately fixing their domicil in another State, which intention was carried into effect, however that intention may have been ascertained or made known.

In a State which is constantly receiving accessions to its population from States where the Common Law, with various

modifications, affords the rule of decision in relation to marital rights, the question when, and under what circumstances, property owned by the wife before marriage, or acquired by gift, devise, or descent afterwards and before her removal into this State, remains her separate property ; and how far, and in what cases, the rights of persons marrying in other States, as to property acquired by them before their immigration, are to be governed by our laws, becomes of great importance. The present is not a favorable moment for as full an investigation and examination of the subject as its importance demands, or as would be desirable before a final decision of the question. But we have thought it proper to advert to the subject and make these references at this time, in order that, if in a former Opinion we have fallen into error, examination may be induced which shall elicit the true doctrine, and we may be enabled to avail ourselves of the earliest occasion which may be afforded of correcting the error.

We are of opinion that the Court did not err in its judgment in this case, and that it be affirmed.

Judgment affirmed.