ROGERS, Justice.
 

 These suits, which were consolidated by agreement of the parties, were brought to annul, for error induced by misrepresentation and, alternatively, for lesion beyond moiety, two deeds to immovable property in Caddo parish, and to recover for each of the plaintiffs an undivided one-tenth interest in the property. The judgments of the court below, which were in accordance with
 
 *773
 
 plaintiffs’ alternative demand, annulled the deeds attacked, but reserved to F. E. Gloyd, the defendant, the right at his election to supplement the price for the property in the sum of $944.12 to each plaintiff. The judgments further provided that, should the defendant fail to supplement the price, the judgments annulling the deeds should become absolute, and the plaintiffs should recover each Jio of 18%oo of the property in dispute. From these judgments the defendant appealed, and plaintiffs have answered the appeal, asking, in effect, that they be recognized as the owners and entitled to the possession of the property. In the alternative, plaintiffs pray that the judgments appealed from be affirmed, if this court should decline to grant them the primary relief asked for.
 

 The undisputed facts are as follows:
 

 Prior to July 2, 1907, the lands in dispute were owned by the Black Bayou Lumber Company, a Louisiana corporation, in which the defendant, F. E. Gloyd, owned 18%oo of the capital stock. In July, 1907, a group of persons headed by one Russ Daniels agreed to purchase from the lumber company all its property, except its lands and book accounts, for a consideration of $40,000. For the purpose of making the transfer and of permitting Daniels and his associates to operate in the name of the Black Bayou Lumber Company, the stock of the corporation was transferred to the purchasers. On July 2, 1907, the Black Bayou Lumber Company transferred its lands in Caddo parish, La., and Cass county, Tex., to A. M. Gloyd, who also owned 18%oo of the stock of the lumber company; the deed, which was duly recorded, reciting a cash consideration of $10,000. At the same time, Gloyd, the transferee, executed an instrument in which he acknowledged that he held the property in trust, and not as owner, for the then stockholders of the Black Bayou Lumber Company.
 

 Subsequently, the former stockholders of the Black Bayou Lumber Company organized the Louisiana Land, Lumber & Coal Company, a Missouri corporation. The stock in the new corporation was issued to its stockholders in the same proportions in which they had owned stock in the old corporation in consideration of the transfer to the new corporation by A. M. Gloyd of the lands which he had acquired from the old corporation. The deed from A. M. Gloyd to the Louisiana Land, Lumber & Coal Company was executed on May 10, 1909.
 

 On April 8,- 1927, F. E. and A. M. Gloyd, having acquired all the capital stock of the Louisiana Land, Lumber & Coal Company, caused the lands of that corporation to be conveyed to them in ‘the proportion of an undivided one-half interest each. On March 31, 1932, F. E. Gloyd acquired the interest of S. M. Gloyd in the property.
 

 Mrs. Maggie Gloyd, the wife of A. M. Gloyd, died intestate on April 8, 1908, without issue, leaving surviving her her mother, Mrs. Elizabeth Huckell, who died prior to the institution of this suit, and four sisters and one brother, or their representatives, the sole descendants of Mrs. Huckell.
 
 *775
 
 Plaintiffs are two of the surviving sisters of Mrs. Maggie Gloyd.
 

 In the early part of the year 1931, it was suggested by lawyers examining the title to some of the lands in dispute that a possible defect might exist therein caused by the change in the marital status of A. M. Gloyd, while the property stood in his name. In order to remedy the defect, deeds to the lands were prepared by the attorney representing F. E. Gloyd and S. M. Gloyd, presented to plaintiffs and signed by them. Each of these deeds recited a cash consideration of $600.
 

 Plaintiffs seek to annul the deeds which they signed on the ground that no consideration was paid, and that they executed the instruments in error as to the extent or value of their claims in the lands, which they allege was misrepresented to them by the agents of F. E. and S. M. Gloyd. Plaintiffs further allege that the property described in their petitions belonged to the matrimonial community existing between A. M. Gloyd and Maggie Gloyd; and that as heirs of their deceased sister they are entitled to be recognized as owners of an undivided one-tenth interest each in the property.
 

 Defendant denies that the property in dispute ever belonged to the community existing between A. M. Gloyd and Maggie Gloyd. He also denies plaintiffs’ allegations of error and misrepresentation, and avers, in the alternative, that, if plaintiffs ■ever had any claim to the property, they were morally bound by a natural obligation to ratify his title.
 

 Plaintiffs utterly failed to sustain their allegations of error and fraud. However, they did show that they never received any consideration for signing the deeds; that is to say, it was stipulated in writing by the parties litigant that, subject to the objection that parol evidence is inadmissible to vary or alter the authentic acts sought to be set aside, the defendant admitted that the consideration of $600 recited in each deed was not actually paid, but defendant asserted that plaintiffs were morally obligated to execute the instruments. In view of the parties’ stipulation, we do not find it necessary to rule on defendant’s objection to the admissibility of the parol evidence or to pass on plaintiffs’ contention that under the statute permitting a litigant to cross-examine his opponent and the Pleading and Practice Act they are entitled to the benefit of the evidence. If we should sustain defendant’s objection and overrule plaintiffs’ contention, we should, nevertheless, in the interest of justice, feel constrained to remand the case in order to permit plaintiffs to propound to defendant interrogatories on facts and articles, which, in the absence of fraud, is one of the well-recognized methods of showing the nature and character of transactions similar to the one under review. If this were done, defendant would be bound to admit, as he has already admitted herein, that no consideration whatever passed to plaintiffs when they signed the disputed deeds.
 

 
 *777
 
 Defendant contends that, as plaintiffs were legatees under the will of A. M. Gloyd, their acceptance of the legacies created a natural obligation on their part to protect his warranty. But defendant does not refer to any law that obligates a particular legatee to make good the warranty of the testator. And the sale from A. M. Gloyd to the Louisiana Land, Lumber & Coal Company was made without any guaranty or warranty of title whatsoever.
 

 Defendant argues that A. M. Gloyd cannot be considered as having held at any time title to the property in dispute or any interest therein for his own benefit or for the benefit of the matrimonial community existing between him and his wife, Maggie Gloyd; that the transfer to Gloyd resulted solely as an incident of his ownership of stock in the Black Bayou Lumber Company; that the transfer was made to him merely for the purpose of bringing about, an administration in its simplest form of the assets of the lumber company until a new corporation should be formed by its former stockholders.
 

 We do not think it can be disputed that, during the interval elapsing between the time A. M. Gloyd acquired the property from the Black Bayou Lumber Company and the time he transferred the property to the Louisiana Land, Lumber & Coal Company, .the title, though in the name of Gloyd, vested in former stockholders of the Black Bayou Lumber Company. The argument of defendant that the transaction in which Gloyd engaged was in the nature of the conversion of one species of his separate property into another species of separate property is untenable. The argument is conclusively answered by the decision of this court in Succession of Watkins, 156 La. 1000, 101 So. 395. In that case a married man bought lands from a corporation and paid the price, not in cash, but with stock of the corporation, which was his separate property. There was no declaration in the deed that the lands were bought with separate funds of the husband or for his separate estate. And the court held that the lands became community property, because, if the transaction was not, strictly speaking, a sale, it was similar to a sale; for article 2402 of the Civil Code, declaring that property bought during marriage in the name of either spouse becomes community property, does not restrict the rule to contracts of sale, but in terms applies to acquisitions “by purchase, or in any other similar way.”
 

 In this case, similarly, there was no declaration in the deed conveying the property to A. M. Gloyd that the lands were acquired with his separate funds or for his separate estáte. And there was practically no difference in the nature of the consideration for the transfer in the Watkins Case and in this case. In both cases the stock of the vendor corporation was the consideration for the sale.
 

 In Schoeffner v. Schoeffner, 163 La. 142, 111 So. 655, the decision in Succession of Watkins was referred to with approval. In that case the legal heir and the testa
 
 *779
 
 mentary heir of the deceased entered into^ a compromise by which the legal heir „ agreed to take a piece of specific property in satisfaction of his claim. The deed by which the transfer was made recited a cash consideration instead of setting forth the facts showing the real consideration. And • this court held that the property must7 be regarded as an acquisition of the matrimonial community.
 

 Defendant argues that this case is governed by our decision in Kittredge v. Grau, 158 La. 154, 103 So. 723, 725, wherein it was held, as shown by the syllabus, that: “Where partnership was converted into a corporation, and each partner received a portion of capital stock in exchange for his partnership interest, held that stock of one partner, whose interest in partnership was separate property did not become community property, since.he did not acquire it by transfer to him of something which he did not already own, but by transformation of his interest in the partnership into interest in corporation.”
 

 The difference between the Watkins Case and the Kittredge Case, as pointed out by this court on the rehearing granted in the latter case, is that Watkins during his marriage bought the lands, whereas Kittredge during his marriage did not buy the corporation stock or acquire it in any similar way.
 

 The transaction by which the title to the lands got out of the Black Bayou Lumber Company into A. M. Gloyd was not an exchange or transformation of property, as was the case in Kittredge v. Grau; it was a sale or a transaction similar to a sale, as was the case in the Succession of Watkins. As stated by this court on the rehearing in the Kittredge Case: “When a man buys property by a contract purporting to be an act of sale, his paying the price with a negotiable or transferable instrument instead of cash does not make the transaction an act of exchange any more than if he paid the price with a check on his bank account.”
 

 Our conclusion is that the judge of the district court was correct in rescinding the pretended deeds holding that the interest in the lands acquired by A. M. Gloyd belonged to the matrimonial community existing between him and his wife, Maggie Gloyd. But we think he erred in basing his judgments on defendant’s alternative plea of lesion beyond moiety. As no consideration passed for the transfers by plaintiffs to S. M. Gloyd and F. E. Gloyd, the purported transfers were wholly without effect. Hence, in our opinion, there is no róom for applying the rule of lesion beyond moiety to the transaction. In conformity with our views, the judgments appealed from must be recast, which can be done in one decree.
 

 As the record discloses that A. M. Gloyd owned 182 shares of the 800 shares of the Black Bayou Lumber Company, his acquisition from the lumber company vested in him an undivided 18%oo interest in the property in dispute. And, as the death of Mag
 
 *781
 
 gie Gloyd, his wife, occurred subsequent to his acquisition of the property and prior to his conveyance thereof to the Louisiana Land, Lumber & Coal Company, plaintiffs as heirs of Maggie Gloyd inherited an undivided
 
 Vio
 
 of 18%oo interest in the property.
 

 For the reasons assigned, the judgments appealed from are annulled, and it is now ordered that there be judgment in favor of plaintiffs, Mrs. Laura Smith and Mrs. Jessie Huckell Taylor, against defendant, Flemmon E. Gloyd, annulling the deeds executed by plaintiffs to Samuel M. Gloyd and defendant, Flemmon E. Gloyd, as recorded in Conveyance Book 309, at pages 241 and 247 of the records of Caddo parish, La. It is further ordered that each of the said plaintiffs be recognized as the owner of an undivided
 
 Vio
 
 of
 
 18%oo
 
 interest in the property described in the said deeds, and as such owner entitled to the possession thereof, and that the defendant be ordered to surrender to plaintiffs their interests in said property free of mortgages and other incuinbrances; defendant to- pay all costs of suit.
 

 O’NIELL, C. J., takes no part.