Max A. BLUMER, Appellant,

v.

Perry KALLISON, Individually, and as Independent Executor of the Estate of Pauline Kallison Blumer, et al.,

No. 13046.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 19, 1956.

Rehearings Denied Jan. 30, 1957.

Remy, Burns & Schiller, Randle Taylor, San Antonio, for appellant.

Carl Wright Johnson, Alfred W. Offer, San Antonio, for appellees.

NORVELL, Justice.

Appellant submits this appeal upon a 285-page brief, containing eighty-one propositions, designated as points of error, and twenty-five additional objections to the trial court's findings and conclusions, which are called assignments of error. The statement of facts contains 1,058 pages. The length of the record was occasioned by detailed evidence as to the operation of certain business organizations in Bexar County, Texas, referred to in the briefs as the Kallison Enterprises. It would obviously be impractical to discuss in detail all of the various contentions raised by the parties, nor is such course essential, as this appeal in the main is determined by one question of law relating to the alleged commingling of separate and community property. The real parties at interest are appellant, Dr. Max A. Blumer, the second and surviving husband of Pauline Kallison, and Suzanna Neustadt, the daughter of Pauline Kallison by her first husband. In her last will, Pauline Kallison Blumer left all her property to Suzanna Neustadt, with the exception of a $10,000 specific bequest to the appellant.

Pauline Kallison married Dr. Max A. Blumer on January 13, 1946, and died on March 8, 1953. At the time of her marriage she owned an approximate one-fourth interest in the Kallison Enterprises as her separate property, although she had conveyed certain interests therein to trustees for the benefit of her daughter, Suzanna Neustadt. It is appellant's contention that during the seven years of his marriage this property became commingled with his wife's income or profits from her separate property (which would constitute community property), so that now all of the Pauline Kallison interest in the Kallison Enterprises must be regarded as community property. He relies upon such cases as Epperson v. Jones, 65 Tex. 425; Smith v. Bailey, 66 Tex. 553, 1 S.W. 627, and Hardee v. Vincent, 136 Tex. 99, 147 S. W.2d 1072.

It appears that the Kallison Enterprises were instituted by Nathan Kallison about

the turn of the century. From the beginning and at the present time one of the more important of these undertakings or organizations was and is "Kallison's" a mercantile business, also known as the "Big Country Store" and "The Kallison Company." Nathan Kallison and his wife had four children, namely, Morris, Perry, Pauline and Tybe. In July of 1942 the Kallison children purchased the store known as "Kallison's" from their parents, together with the land upon which the store was located. Each of the children took an undivided one-fourth interest. At the time of this transaction Pauline was a widow. Morris and Perry Kallison had worked in the store since childhood and before the 1942 purchase were in actual control and management of the business. They continued to operate the store as a family enterprise and the trial court found that "although the sisters, Pauline and Tybe, each owned an equal undivided interest with their brothers, Morris and Perry, * * * the brothers managed the interests of their sisters, as trustees, with the implied, if not the actual consent of the sisters to do so."

In 1944 Nathan Kallison died, and under his will his wife retained her community interest in a large cattle ranch and the other one-half went to the children, share and share alike. Largely as a result of the activities of Morris and Perry Kallison, numerous other business enterprises have been developed in addition to the "Big Country Store" and the Kallison Ranch. In his findings of fact, the trial judge lists fourteen business organizations or accounts owned and dominated by the members of the Kallison family. In six of these Pauline Blumer is listed as the owner of an undivided one-fourth interest. In four others she and her daughter, Suzanna Neustadt, are listed as the owners of a one-eighth interest each, indicating a gift from the mother to the daughter during the latter's lifetime. As above indicated, Pauline Kallison was also the owner of an undivided one-eighth interest in the Kallison Ranch by devise from her father, and so noted by the trial judge. It is these interests listed as belonging to Pauline Kallison Blumer which are involved here, and the question is whether such interests constituted separate or community property at the time of her death.

The methods employed in operating the Kallison Enterprises are illustrated by those used in managing "Kallison's" or the "Big Country Store." Most all types of farm and department store merchandise were sold with a substantially complete inventory turnover taking place two or three times a year. Money from the sales of merchandise was placed in a bank account and withdrawn for the purpose of buying additional merchandise and paying salaries to employees and meeting other expenses of the business. At times money was borrowed from the bank to buy merchandise and the loan repaid from money acquired from the sales of merchandise. As one of the managing partners briefly described the operation: The money from the bank account was spent "in the general conduct of the business, you would have bills to pay; you would have advertising, anything in conducting the business."

No records were kept of the net profits of the individual sales that were made, and that fact seems to be the basis of appellant's contention that at the time of Pauline Kallison Blumer's death her separate interest in the various Kallison Enterprises became so commingled with the community property of herself and husband that it could not be identified.

It appears, however, that the bookkeeping system maintained by the Kallison Enterprises was modern and accurate. The trial judge upon sufficient evidence found that:

"All bookkeeping transactions pertaining to the various Kallison business enterprises which are herein in-

volved were kept and maintained in one central accounting department. This department was located upon the premises of the Kallison Store, also shown herein as the Kallison Company, and the bookkeeping entries which were recorded on each particular enterprise were under the direction and supervision of Morris or Perry Kallison, or both. The books, records and documents, as aforesaid were accurate and correctly kept. The monies realized from the operations of the several business enterprises were all deposited in the same bank; and except for the bookkeeping entries maintained in the central accounting office, no designation was made on such deposit as to what amount was principal, or what amount was profits or net rents and revenues derived therefrom. *However, the profits realized and the net rents and revenues from the separate property, and the profits from the sale thereof, were kept separately in the books of the several enterprises and were readily traceable from an examination thereof.*" (Italics ours.)

It appears that the books of the Kallison Enterprises accurately disclosed the profits derived therefrom and the part thereof set aside and apportioned to the interest of Pauline Kallison, and that during the existence of her marriage with appellant she drew from the Kallison accounts an amount in excess of that apportioned to her as profits. The evidence discloses that an attempt was made to keep the books so that at all times the principal investment of Pauline Kallison (separate property) could be identified and calculated separately from the profits or earnings thereon (community property). No objection to the bookkeeping methods employed to accomplish this purpose was ever raised by appellant. The trial court on this point found that:

"Dr. Blumer never at any time put any money of his own into the Kallison enterprises; that neither Mrs.

Blumer nor Dr. Blumer contributed any labor or effort to the business; that Dr. Blumer told Morris Kallison on many occasions, and in fact, when he first married Pauline, that he did not want to know anything about the business and that the property was all hers, meaning his wife's, and that he did not want any part of it; that Dr. Blumer never exercised any control over the profits derived from the business, except to share in such profits; that Dr. Blumer knew how such funds were being credited to his wife and how the business was being conducted and yet said nothing for seven years; * * * that accurate books, records and accounts were kept on all purchases, sales, expenses, profits, owners' funds and withdrawals therefrom; that no community obligation by Dr. and Mrs. Blumer or by Dr. Blumer separately as manager of the community was ever entered into for such enterprises by Dr. Blumer during the entire marriage, and the court finds that assets of the community were never pledged or given as security for any obligation, either for the mercantile business or any related enterprises or for any monies borrowed to purchase, pay for, or improve real properties in the Kallison enterprises; * * *."

We think the correct solution to the controlling question in this case is indicated by the Supreme Court decision in Schmidt v. Huppman, 73 Tex. 112, 11 S.W. 175, 176. No one disputes the proposition that all property of which a husband or wife dies possessed is presumed to be community property, nor that the burden of establishing the separate nature of such property rests upon the one so asserting. Article 4619, Vernon's Ann.Tex.Stats. The question here is whether or not that burden has been met and the separate character of the property clearly shown. In speaking of a problem growing out of the operation of a

mercantile business, the Court said in the Schmidt case:

"It seems that no part of the stock of merchandise owned by Schmidt at the time of his marriage was found *in specie* in the stock on hand at the death of the wife, but at no time during the coverture was the stock reduced below its value at the time of the marriage, but was gradually increased from that time until the death of the wife. This property he brought into the connubial partnership, and used its profits and increase for the benefit of the community estate. The connubial partnership from which the community estate results is founded upon principles of exact equality and justice as to property rights of the spouses. Where the property owned by the spouses, respectively, at the time of marriage has been preserved *in specie*, its separate character is retained, and there is no difficulty in identifying it; but where the separate property has not been so preserved, but has undergone mutations, it is indispensable that it be clearly and indisputably traced and identified, to maintain its separate character. Chapman v. Allen, 15 Tex. [278] 283. But can it be said that in this case there was any actual mutation in this separate property of the husband? The business was carried on for a period of about 13 years, goods bought and added to the stock, and sold out from day to day, during these years. *While the specific articles that made up the original stock had been sold, and their places supplied by others from time to time as the exigencies of the business required, the property was in fact the same, a stock of merchandise,* and we think there was not such change in the property as would divest it of its separate character, to the extent of the goods owned by appellant at the time of the marriage." (Italics ours.)

Appellant insists that the Schmidt case is contrary to other subsequent Supreme Court cases, and, however that may be with reference to certain holdings therein contained, we find nothing in our decisions which preclude our recognizing a going business as a going business, rather than a miscellaneous collection of screws and bolts, saws, shoes, grass seeds, fishing tackle and television sets. Any other view would be most unrealistic and impractical. It appears that the gross profits per year of the Kallison Enterprises were in excess of $400,000. Any plan of bookkeeping which would involve a separate and accurate account or record of the profit realized upon each article of merchandise or other property sold would be wholly impractical. As we understand appellant's contention, it is that if a saddle were in stock at the time of his marriage to Pauline Kallison and was thereafter sold, the profit on such sale would have to be *separately* accounted for and then *in turn that profit* (community property) traced into the purchase of another saddle or other merchandise and so on, ad infinitum. This amounts to the practical assertion that the separate interest of a spouse in a mercantile business cannot be traced by modern accounting methods once there has been a turnover of stock.

█ It is not necessary to accept the thesis of the Schmidt case to the effect that the value of the separate interest at the commencement of the connubial partnership may be represented by nonidentical goods of equal value at the conclusion of such relationship. The question is one primarily of tracing and accounting for the separate interest and the facts of this case go far beyond those disclosed by the Schmidt opinion. This is a case in which the books or accounts of the enterprises were kept by persons other than the connubial partners. The keeping of the books indicates a purpose to identify and keep separate the profits as distinguished from the capital of the business. This means

that an intention to distinguish the community (profits) from capital (separate) was attempted. The appellant, according to the trial court's findings, recognized this intention, acknowledged that the business belonged to his wife and raised no objection to the methods employed in determining and setting aside profits arising therefrom. This evidence may not show a gift of profits from husband to wife, but it does demonstrate that during the life of the wife he raised no objections to the methods employed in ascertaining profits and thus distinguishing between the separate and community estates involved. Under these circumstances, the trial judge was correct in regarding the interest of Pauline Kallison in the Kallison Enterprises at the time of her marriage as an interest in a business and in a stock of merchandise, and further concluding that under the business practices and bookkeeping methods employed, there was no commingling of properties or funds that would prevent the identification of the separate property of Pauline Kallison.

The authorities relied upon by appellant for the most part are those in which accurate records and books of account were not kept and as a consequence the courts held that the community presumption obtained and the property involved should be accordingly treated. For example, this Court in Gibson v. Gibson, Tex.Civ.App., 202 S.W.2d 288, in holding that a stock of whiskies and other property should be regarded as community property, specifically pointed out that no records were kept by which the separate and community interests could be identified. In the present case it appears that allowing a reasonable time for the posting of books and the striking of balances, the profits or community interest could at all times be reasonably identified. Our holding is that the law does not require the impossible or impractical, i. e., a separate account of each article of merchandise bought and sold.

The foregoing disposes of most of the disputed points arising upon this appeal. We have examined the full and complete findings of fact and conclusions of law made by the trial court and approve of them in the main. There are certain details or portions of the findings which are subject to the objections urged by appellees which we shall notice.

■ The trial judge found that on March 22, 1948, Morris Kallison negotiated for and purchased from Frank M. Brady a certain unimproved lot for the benefit of the "Community Center Account," one of the Kallison Enterprises listed in the findings. Pauline Kallison Blumer owned an undivided one-fourth interest in this account. The trial court concluded as a matter of law that "Dr. Max A. Blumer owned an undivided one-eighth interest, as his separate property, in and to that certain parcel of land known as the 'Brady Lot' being Lot 16, Block 3, N.C.B. 111, located in San Antonio, Texas." We disapprove of this conclusion of law. The trial judge found that although an $8,000 note had been given in partial payment for the lot, Dr. Blumer never signed the note or any obligation binding the community. The evidence shows conclusively that this property was purchased and paid for by the managers of Kallison Enterprises in the same manner as was other properties acquired by the organizations, that is, by Morris and Perry Kallison acting for themselves and their two sisters. In other words, this Brady lot was purchased as a Kallison business operation and no reason is perceivable which would justify its being regarded in any different light than other and similar transactions. The trial judge found that "since the deed recites Max A. Blumer as a grantee therein, I do not find that such title should be disturbed, * * *." Perry Kallison testified that Dr. Blumer's name was placed in the deed by mistake on the part of the title company handling the transaction, but,

however that may be, the terms of the deed were not conclusive in establishing the nature of the property as between or among the parties to this suit. It was definitely shown that such property, like others acquired by the Kallison Enterprises, was purchased under terms and conditions which would fix its status as separate rather than community. Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246, holdings approved by Supreme Court; Gorman v. Gorman, Tex.Civ.App., 180 S.W.2d 470; Muran v. Muran, Tex.Civ. App., 210 S.W.2d 617. As above pointed out, Pauline Kallison Blumer, during her marriage with appellant, withdrew all of her profits (community property) arising out of the operation of the Kallison Enterprises. In fact, her profit account was overdrawn some $47,000, according to the trial court's findings.

█ We are likewise of the opinion that the trial court erred in holding that two shares in Northview Country Club constituted the separate property of appellant. This stock was acquired during his marriage with Pauline Kallison and there is no evidence that he paid for the same with his separate funds. Here the community presumption applies. Griggs v. Reed, Tex.Civ.App., 233 S.W.2d 907, and cases therein cited.

█ We overrule the remaining cross-points asserted by appellees. All of them are fully covered by the trial court's findings and conclusions and further discussion is unnecessary. We need only say that we are of the opinion that the last will and testament of Pauline Kallison Blumer did not put appellant to an election to either take under the will or refuse to do so and claim his community interest. Upon the point, we regard

Avery v. Johnson, 108 Tex. 294, 192 S. W. 542, and Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670 as controlling.

With the exceptions noted, we approve the findings of fact filed by the trial court and adopt the same as our findings herein.

The judgment of the trial court will be reformed in the following particulars:

Paragraph 2 of the judgment is modified so as to read as follows:

2. That the plaintiff, Dr. Max A. Blumer, has no legal or equitable right, title or interest in or to any of the properties, real, personal, mixed, or otherwise, of the Kallison ventures or enterprises, either as set out in plaintiff's pleadings filed herein or otherwise.

Paragraph 3 of the judgment is eliminated.

Paragraph 16 of the judgment is modified so as to read as follows:

16. That on the death of Pauline Kallison Blumer on March 8, 1953, there existed one certificate being No. 56, for two shares of the capital stock of $50 each, par value, of the Northview Country Club, a corporation of San Antonio, Texas, such stock having been issued to Dr. Max A. Blumer and dated December 22, 1948. It is decreed that said stock was the community property of Dr. Max A. Blumer and Pauline Kallison Blumer and that an undivided one-half interest therein is now owned by Dr. Max A. Blumer and the remaining one-half by the Estate of Pauline Kallison Blumer.

The judgment of the trial court, as thus reformed, will be affirmed.

Reformed and affirmed.