Tom Vick **TIRADO,** Appellant,

v.

Merle Lewis **TIRADO,** Appellee.

No. 7362.

Court of Civil Appeals of Texas.

Texarkana.

April 24, 1962.

Rehearing Denied May 15, 1962.

Smith & Lehmann, Percy Foreman, Houston, for appellant.

Vinson Elkins, Weems & Searls, Edward D. Coulson, Houston, for appellee.

DAVIS, Justice.

Plaintiff-appellee, Merle Lewis Tirado, sued the appellant-defendant, Tom Vick Tirado, for a divorce, for partition of their community property, and asked that their separate properties be set aside to each of them. The appellant filed a cross-action but later decided not to contest the divorce.

The trial court referred the issues as to the extent and nature of their separate property as well as the community property to a Master in Chancery, F. T. Baldwin, hereinafter referred to as Master. The Master heard evidence as to the identities of the properties of the parties prior to their marriage on April 5, 1956, and after the marriage to and including December 31, 1959. Later, the Master heard evidence to bring the status of the properties forward to August, 1960. Prior to her marriage to the appellant, the appellee had been the wife of Dale W. Moore who died on November 1, 1954. Under the last Will and Testament of Dale W. Moore, the appellee was named independent executrix, without bond, and she was the principal and residuary beneficiary of the large estate.

As above stated the appellee married the appellant on April 5, 1956. They separated on July 21, 1959.

The record in the case is voluminous. In view of the position taken by the appellant and appellee, who both, in fact, perfected an appeal, we will have to look to the books and records of the estate of Dale W. Moore, deceased, former husband of the appellee, to the expert testimony of Miss Sarah Ann Lewellen, a certified public accountant, and to other oral testimony, to determine the issues presented. A large portion of the estates involved were actually the separate property of the appellant and appellee at the time they married. Monies used to acquire assets during the marriage were traced in the evidence offered before the Master, and in the trial court. At the trial, additional testimony was produced in behalf of the appellee so as to bring forward to the date of divorce, showing the status and identity of both separate and community property. The Master's report, the court order with respect to the Master's report, the transcript of the testimony with numerous exhibits, were placed in evidence.

A final judgment was entered on February 14, 1961, granting appellee a divorce and awarding certain properties to each of them as their separate property, and dividing the other property of the parties as community property. Both the appellant and appellee excepted to the judgment of the trial court as to the division of the property and each perfected an appeal.

The appellant brings forward seven "propositions" which he terms as "points of error". Nowhere in his brief does he refer to any action of the trial court as being error, except in his conclusion and prayer.

Appellant's brief does not conform to Rule 418 Vernon's Ann. T.R.C.P. In view of the fact that he can amend the brief under Rule 431, we have decided to consider the "propositions" as "points of error." Under Rule 418, on page 228 of the 3rd volume of Vernon's Annotated Rules of Civil Procedure by Franki, under the heading "Propositions and Points" are instructions on the questions of "propositions" and "points". All attorneys should study Rule 418 and the instructions thereunder, in connection with the filing of their briefs.

The appellee brings forward six counterpoints of error and three points of error and one proposition. The six counter-points of error challenge the seven points of error brought forward by the appellant. By her points of error and proposition, she challenges the judgment of the trial court as to awarding the appellant one-half (½) interest in and to the 660 shares of stock in the 885 Park Avenue Corporation, the lease, improvements and the furnishings contained in the apartment in New York.

Appellant takes the position that the sale of the oil and gas from the separate estate of the appellee that is situated in Louisiana became community property. Appellant admits that at the date of the marriage that the appellee owned extensive oil and gas interests lying wholly within the State of Louisiana. The property is actually a working interest in and to certain oil and gas leases situated in Louisiana. It was the separate

property of the appellee on the date of marriage, and which she owned and held at the date of the judgment. During the marriage, the production of the oil and gas was sold to various companies and the proceeds from the sale thereof were deposited in the First City National Bank at Houston, Texas, in the name of Dale W. Moore, Production Account. From the date of the marriage to the date of divorce, there was produced and sold from the Louisiana leases large quantities of oil and gas. During said marriage, there was produced oil and gas from lands in Texas. During the marriage relation, monies were withdrawn from the production account for living expenses, and to pay a salary to the appellant of $1750.00 per month. There was also withdrawn from the production account expenses to pay for appellee's portion of the production cost of the oil and gas, insurance, etc. On the date of the judgment, there was a small amount of money in the production account. The balance was accounted for.

■ The appellant takes the position that he is entitled to one-half (½) of all the production on the oil and gas in both Louisiana and Texas because of the commingling of the funds from the sale of the oil and gas in Louisiana with that which was produced in Texas. Appellee takes the position that the property was her separate property on the date of the marriage, that the sale of the oil and gas was actually a sale of movable personal property and the cash received by a married woman domiciled in Texas and deposited in a Texas bank from oil and gas leases situated in Louisiana was and is her separate property. Oil and gas in place in Louisiana is a part of the realty and is so classified by Title 9, Section 1105 of the Louisiana Statutes. But, oil and gas, both by the law of Louisiana and Texas, become personal property upon its production and severance. Art. 483, LSA–Civ.Code; De Moss v. Sample, et al., 143 La. 243, 78 So. 482; Art. 4614, Tex.Civ.Statutes; Norris v. Vaughn, 152 Tex. 491, 260 S.W.2d 676, 678; Cone v. Cone, Tex.Civ.App., 266 S.W.2d 480, err. dism.

■ Oil and gas that has been produced from the realty becomes movable property and in this case, the separate property of the appellee, under the laws of Texas. The appellant and the appellee were married in Texas, lived and resided in Texas during their entire married life, the contract to marry was entered into in Texas, and there were no agreements, anti or postnuptial, shown by the record, as to what was to become of the separate property of the appellee. The income from the appellee's properties for the sale of the oil and gas produced and severed, constituting her personal property, a part of her separate estate, was sold and the purchaser became indebted to her and paid their debts to her in Houston, Harris County, Texas; not in Louisiana. State ex rel. Muslow v. Louisiana Oil Refining Corporation, La.App., 176 So. 686 (Louisiana Repeals 1937 Certiorari denied 1937) Article 465, LSA–Civ.Code; Stephens v. Stephens, Tex.Civ.App., 292 S. W. 290, err. dism.; Chaffin v. Hall, Tex. Civ.App., 210 S.W.2d 191, err. ref., n. r. e.; Choice v. Texas Co., U.S.D.C., 2 F.Supp. 160.

■ Under the evidence in the case, the oil and gas, after it was produced from the realty, was movable personal property. That being true, the Conflict of Law rules apply and determination of its status as separate property, or community property, is made by the law of the state of the domicile of the parties. The Statutes and Codes of Louisiana which appellant seeks to have enforced have no extra-territorial effect. The Statutes and the Codes are contrary to the laws of Texas, and the Texas courts will refuse to go against or contrary to such statutes or codes and will enforce its own law as a matter of public policy. The statutes and codes, and judicial decisions of Louisiana, upon which the appellant relies are contrary to the law and public policy of Texas. Therefore, the personal movable property and all income, profits, fruits and benefits arising from the Louisiana property of appellee, together with all Louisiana property which the law

constitutes movable, will fall as separate or community as the laws of Texas dictate.

The general law applicable in Texas on Conflicts of Law is cited in 12 Tex.Juris., 2d, Secs. 1 to 12, pp. 303 to 311. See the authorities therein cited. As the commingling of goods, see 12 Tex.Juris. 2d, Secs. 1, 2 and 4, pp. 315 and 317. See authorities therein cited.

Speer's Third Edition on Law of Marital Rights in Texas on Conflict of Laws, agrees with the above holdings. See Sections 29, 58, 75 and 83. From the beginning of the history of our Texas courts down to the present time, there are cases that show how deeply imbedded is the public policy of this State as to the rule of a wife's separate property from which the Texas courts have never deviated. Edrington v. Mayfield, 5 Texas 363; State of Texas v. Barrow, 14 Tex. 179; Castro v. Illies, 22 Tex. 479; Hill v. Townsend, 24 Tex. 575; Franklin v. Piper, 5 Tex.Civ.App. 253, 23 S.W. 942; Ward v. Cameron, 97 Tex. 466, 80 S.W. 69; Cox v. McClave, Tex. Civ.App., 22 S.W.2d 961, err. dism.; Grange v. Kayser, Tex.Civ.App., 80 S.W. 2d 1007, N.W.H.; Bell v. Bell, Tex.Civ. App., 180 S.W.2d 466, err. ref., w. o. m.

■ Most courts and writers agree that the law of the domicile should control. Stumberg 2d Edition, on Conflict of Laws, 312; Restatement Sec. 289; 11 Tex.Law Review 53. There is eminent authority for the proposition that the law of the domicile controls as to property rights in movables owned at the time of the marriage, during the marriage and at the time of the judgment of divorce. Stumberg 2nd Edition on Conflict of Laws, 313. As hereinabove stated, the contract of marriage was created in Texas. The rights, or better the legal relation arising out of its creation, depend upon the laws of Texas and as vested rights should be given effect. Stumberg 2nd Edition on Conflict of Laws, 226.

One of the various articles of the Louisiana Civil Code upon which the appellant relies has to do with property of people who *contract a marriage in the State of Louisiana.* The cases bearing on the subject will show that the Louisiana courts have consistently treated Article 2400 of the LSA–Civil Code as being the premise for the existence or non-existence of a community of equates and gains, and have treated Article 2402 LSA–Civil Code as setting out the basis by which property comes into the community. Article 2399 of the LSA–Civil Code begins with this phrase: "Every marriage contracted in this State, * * *". For decisions of the Courts of Louisiana see The Succession of Watkins, 156 La. 1000, 101 So. 395; Kittredge v. Grau, 103 So. 723; Smith v. Gloyd, 182 La. 770, 162 So. 617, and Succession of Robinson, 23 La.Ann. 174.

■ Appellant's contention that the operation of the oil and gas interest in Texas and Louisiana was the operation of a business is not only contrary to the evidence, the findings of the Master, and the trial court, but, also, is immaterial to the determination to the status as separate or community for monies received for oil and gas from appellee's separate property. Actually, the appellee did not own the oil and gas lease from which the oil and gas was produced. She owned a working interest therein. Other properties in Texas produced oil and gas and she received a portion thereof. Dale W. Moore, during his lifetime had acquired the property. By his Will, it was transferred to the appellee. The Master found from the evidence that the appellant and the appellee were non-operators of the working interest. That no labor, effort or talent was required of them other than to deposit the receipts from the oil and gas and pay the expenses in connection with their production. The findings were adopted by the trial court. The evidence is sufficient to support the actions of the Master and of the trial court. Article 4614 Tex.Rev. Civ.Stat. Appellee had the right of the sole management, control and disposition, both real and personal. Snyder-Bell Gro-

cery Co. v. Hamilton, Tex.Civ.App., 276 S.W. 752, n. w. h.; Coggin v. Coggin, Tex. Civ.App., 204 S.W.2d 47, n. w. h.; Norris v. Vaughn, supra.

The finding of the Master, adopted by the trial court, that the production account did not at any time become so commingled with community funds as to make applicable the presumption contained in Art. 4619, T.R.C.S., that the funds on deposit were not community funds is supported by the evidence. The appellee sustained the burden of establishing, by satisfactory evidence, that the assets acquired after marriage with funds from the production account were the separate property of the appellee. This having been done, it then became the duty of the appellant to produce some evidence to show otherwise. This, the appellant failed to do. Edsall v. Edsall, Tex.Civ.App., 240 S.W.2d 424, n. w. h.; Blumer v. Kallison, Tex.Civ. App., 297 S.W.2d 898, err. ref., n. r. e.; Barrington v. Barrington, Tex.Civ.App., 290 S.W.2d 297, n. w. h. Other cases that illustrate the doctrine that the inception to the right to title governs the status of the property as separate or community are as follows: Barbet v. Langlois, 5 La.Ann. 212, 23 La.Rep. 183; Welder, et al., v. Lambert, et al., 91 Tex. 510, 44 S.W. 281; MacRae v. MacRae, Tex.Civ.App., 144 S. W.2d 320, err. ref.; Moore v. Moore, Tex. Civ.App., 192 S.W.2d 929, n. w. h.; Fuhrman v. Fuhrman, Tex.Civ.App., 302 S.W. 2d 205.

Prior to the marriage of appellant and appellee, the appellee owned some stock in the First City National Bank of Houston. During the marriage, the bank made a stock split. A stock dividend was derived from the shares of stock that the appellee actually owned. The appellee proved by the evidence that the shares of stock were her separate property and the stock dividends arrived at by the stock split did not in any manner increase the value of the stocks that she owned prior to the split. The Master found that the capital stock received after marriage as a result of stock splits or stock dividends, based upon the number of shares owned prior to marriage, as well as stock received in exchange for capital stock received prior to marriage was the separate property of the appellee. He further found, as a matter of law, that the additional shares became the appellee's separate property. The trial court adopted these findings of fact.

The appellant attempts to make a distinction between stock splits and stock dividends which is meaningless under Texas community property law. Appellant also attempts to inject an issue of constitutional law into the case where none actually exists. When the stock dividends were received, based on her separate stock, they merely presented a change or mutation in the evidence which appellee held of the same proportional ownership in the corporation. Thus no question of constitutional law is here involved. Fuhrman v. Fuhrman, Tex.Civ.App., 302 S.W.2d 205, err. dism.; Johnson v. The First National Bank of Fort Worth (Tex.Civ.App.), 306 S.W.2d 927, n. w. h; Hilley v. Hilley, Tex., 342 S.W.2d 565.

The lots about which the appellant complains in his 7th point of error are original easements by necessity of ingress and egress from other of the ship channel tracts. At the time of the marriage, these tracts were abandoned lands. The land over which the easement was situated was owned one-half by the owners of the tracts abutting on the north and one-half by those by the owners abutting on the south. At the time of the marriage, appellee only owned an 80% undivided interest in most of these ship channel properties and was in the process of negotiating for the remaining small tracts. The tracts of this property purchased by her after marriage were conveyed to appellee by deeds and recited that payment was made from her separate funds and that the property was conveyed to her as her separate property.

When appellee had acquired title to all the surrounding properties, this brought about an extinguishment of the servitude created by the easements for ingress and egress and the merger of the easements into the estate held by the appellee. 21 Tex.Jur.2d, Sec. 51; Howell v. Estes, 71 Tex. 690, 12 S.W. 62.

The points of error raised by the appellant are overruled.

Next, we will discuss the points of error raised by the appellee.

■ The Master made findings of fact pertaining to the stock in the 885 Park Avenue Corporation and improvements and furnishings contained in the New York apartment. The Master found that appellee purchased 660 shares of stock of 885 Park Avenue Corporation; that the appellant requested that in payment therefor checks be drawn on the production account; that the improvements and furnishings were all paid for out of the production account, the separate property of the appellee. The Master further found that after the purchase of the property and the status of the property had become fixed as appellee's separate property, then a contribution of $10,000.00 from the community estate for improvements or furnishings was made. The Master further found, from the evidence introduced, that it was the intention and understanding of both the appellant and the appellee that the stocks purchased, the lease, the improvements and furnishings, were the separate property of the appellee.

The evidence before the Master and before the trial court was sufficient to support the findings of fact made by the Master. There was testimony of M. D. Greer which reflects that at the time appellee was buying the 660 shares of stock, she stated that she was purchasing this stock as her separate property. That she evidenced the intention at the time of its acquisition that this stock would be appellee's separate property is confirmed by Mr. Greer's letter of September 19, 1956.

By the testimony by Miss Lewellen, and by appellee's checks, it was established beyond all doubt that all of the money that was paid for the stock was paid by checks drawn on the production account of the appellee and was her separate property. The stock was purchased by appellee's separate funds, and she intended it to be her separate property at the time of purchase. Its status as appellee's separate property was established.

Concerning the improvements and furnishings located in the New York penthouse apartment, appellee carefully traced by the testimony of Miss Lewellen, the testimony of Mr. Greer, *the admissions of appellant,* and appellee's exhibits before the Master, shows it to be appellee's separate property.

Appellant made no effort to refute or dispute the amount of money used to acquire the shares of stock in the New York apartment, improvements and furniture. His sole claim that these properties were community is based upon his contention that the production account funds were community funds. We cannot agree with this contention.

The appellee owned an excessively large estate at the time of her marriage. The appellant owned a considerable amount of separate property. At the time of the divorce, he had some four bank accounts and quite a few shares of stock. We are not impressed with his attitude and contention in the trial of the case. The appellee had spent large sums of money during their marriage for the support of the community estate, and had paid the appellant a salary of $1750.00 per month for doing nothing. There was nothing said about what he used the $1750.00 per month for, nor where it went. From the evidence in the case, the appellant received by far more than his just and fair share of the property of the parties. The judgment of the trial court was in error in awarding to the appellant one-half interest in the shares of stock and the furniture and fixtures in the New York apartment.

The judgment of the trial court in so far as any contention of any error is made by the appellant, is affirmed.

We hold, from the evidence and admissions in the case, that the 660 shares of stock in the 885 Park Avenue Corporation in New York, and the furniture and fixtures in the apartment should be the separate property of the appellee; and, that the appellant should be entitled to a judgment for ½ of the $10,000.00 that was invested out of the community funds in the furniture and fixtures that were placed in the New York apartment. That part of the judgment is hereby reversed and remanded to the trial court for further proceedings.

No appeal was taken from the judgment of divorce; the divorce decree is not disturbed.

Affirmed in part, reversed and remanded in part.

Appellant and appellee will have 15 days from the date of this judgment within which to file a motion for rehearing.